IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FROSTED APPLE, LLC, *et al.*,           *

    Plaintiffs,                                *

v.                                                        *    Civ. No. JKB-22-1128

COASTAL LABORATORIES, INC., *et al.*,   *

    Defendants.                             *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM

Plaintiffs Frosted Apple, LLC ("Frosted Apple") and Jacqueline Montfort have filed a Motion for Default Judgment. (ECF Nos. 134, 143.) For the reasons that follow, the Motion will be granted in part and denied in part, and judgment will be entered against certain Defendants. Plaintiffs will be directed to show cause why the case should not otherwise be dismissed.

### I. Factual Background

Plaintiffs allege, in short, that:

> This action is filed because of Defendant Patrick Britton-Harr's and his affiliates' calculated scheme that defrauded Plaintiffs through, among other things, the movement of funds through a network of sham entities owned and controlled by Britton-Harr. Britton-Harr diverted millions of dollars loaned by Plaintiffs to his medical laboratory testing company for purposes unrelated to that business, to fund other business ventures, and to enrich himself and members of his family, including his spouse, Tracy Deckman. Britton-Harr and his affiliates orchestrated hundreds of wire transfers between entities he controlled and to third parties, created false financial records and fictitious billing documents, and engaged in other deceptive conduct that prevented Plaintiffs from discovering his actions.

(ECF No. 103 ¶ 1.)

Plaintiffs allege that Britton-Harr at all relevant times was the president, chief executive officer, and majority or controlling shareholder of several entities: Coastal Laboratories, Inc.

Delaware; Coastal Laboratories, Inc. Maryland (together with Coastal Laboratories, Inc. Delaware, "Coastal"); Coastal Management Group ("CMG"); Britton-Harr Enterprises, Inc. ("BHE"); AMSOnsite, Inc. ("AMS"); AeroVanti, Inc.; AeroVanti Aviation, LLC; and AeroVanti Hangar, LLC (collectively, "AeroVanti"). (*Id.* at ¶ 7.)[1] Plaintiffs also allege that he was a member of Tombstone Holdings, LLC ("Tombstone"), an entity he formed with his wife, Tracy Deckman. (*Id.*) Plaintiffs allege that Britton-Harr actively participated in the management and oversight of each of the entities, that he exercised control over their assets and property, including signature authority on bank accounts, and that he was the alter ego of each of the entities. (*Id.*)

Coastal purchased two medical laboratories in 2020. (*Id.* ¶ 18.) Coastal required funds for the purchase of the laboratories and working capital to operate them, and therefore sought private funding. (*Id.* ¶ 26–27.) Plaintiffs made three short-term loans to Coastal. (*Id.* ¶ 28.) The terms of each loan were memorialized in three promissory notes. (*Id.* ¶ 30.) The first note is dated April 6, 2020 (the "April Note"). (*Id.* ¶ 32.) It provides that, in exchange for Frosted Apple's $1,500,000.00 loan, Coastal would pay Frosted Apple $1,950,000.00 by November 30, 2020. (*Id.* ¶ 33.) The second note is dated May 1, 2020 (the "May Note"). (*Id.* ¶ 40.) It provides that, in exchange for Frosted Apple's $250,000.00 loan, Coastal would pay Frosted Apple $325,000.00 by September 5, 2020. (*Id.* ¶ 41.) The third note is dated June 16, 2020 (the "June Note"). (*Id.* ¶ 47.) It provides that, in exchange for Montfort's $1,250,000.00 loan, Coastal would pay her $1,625,000.00 by January 19, 2021. (*Id.* ¶ 48.) Montfort wired Coastal $1,000,000 (rather than the $1,250,000.00). (*Id.* ¶ 50.) Plaintiffs explain that Montfort's understanding was that the loan was for $1,000,000, not the greater amount. (ECF No. 134 at 6.) All three Notes provided that,

---

[1] Plaintiffs filed a sealed, unredacted version of the Amended Complaint (ECF No. 65) and an unsealed, redacted version of the Amended Complaint (ECF No. 103).

upon a default, Coastal would be required to pay interest at a default rate of 8.33% per 30 days. (ECF No. 103 ¶¶ 34, 42, 49.) Coastal has not repaid any of the three loans. (*Id.* ¶¶ 39, 46, 54.)

Plaintiffs allege that the Notes placed restrictions on the transactions into which Coastal could enter, but that "[d]espite these restrictions, Britton-Harr seized upon the opportunity to divert funds from Coastal, including Frosted Apple and Montfort's loan proceeds, for purposes unrelated to Coastal's business and restricted by the Notes." (*Id.* ¶¶ 70–71.) Such diversion of funds caused Coastal to be unable to repay the loans. (*See id.* ¶¶ 78, 84, 90, 111, 128.)

Plaintiffs allege in great detail the diversion of funds over 34 pages. (*See id.* ¶¶ 70–143 (detailing transfers from Coastal to the various Britton-Harr-controlled entities, to himself, to family members, and for legal expenses).) For instance, with respect to transfers to CMG, Plaintiffs allege that: Coastal transferred funds to CMG beginning on the day of Coastal's receipt of the funds received pursuant the April Note; that Britton-Harr caused Coastal to transfer funds to CMG; Britton-Harr caused Coastal to record in its books and records "Marketing" payments to CMG when no marketing services were provided by CMG to Coastal; and at least $1,500,000 was transferred to CMG after its charter was forfeited. (*Id.* ¶¶ 74–79.) Plaintiffs make similar allegations with respect to transactions with BHE, AMS, Tombstone, and the AeroVanti entities.

Plaintiffs brought 23 claims against the Defendants, including breach of contract claims against Coastal based upon the nonpayment of the loans and aiding and abetting claims against Tombstone, BHE, AMS, CMG, and AeroVanti.

## II. Procedural Background

As is relevant for purposes of the pending Motion, Plaintiffs initially filed a Complaint bringing claims against seven Defendants: Patrick Britton-Harr, G. Ellsworth Harris,[2] the two

---

[2] G. Ellsworth Harris has since settled with Plaintiffs. (*See* ECF No. 135.)

Coastal entities, AMS, BHE, and CMG. (ECF No. 3.) All Defendants filed Answers. (ECF Nos. 8, 17.) Plaintiffs then filed an Amended Complaint, which added five new Defendants: Deckman, Tombstone, and the three AeroVanti entities. (ECF No. 65.)

Of the five new Defendants, only Deckman filed an Answer to the Amended Complaint. (ECF No. 96.) Therefore, Plaintiffs sought and obtained a Clerk's Entry of Default against Tombstone and the three AeroVanti entities. (ECF Nos. 81–87, 93–95.) The original Defendants all filed Answers to the Amended Complaint. (ECF Nos. 72, 73.) However, counsel for Patrick Britton-Harr, Coastal, AMS, BHE, and CMG filed a motion to withdraw as counsel, which the Court granted. (*See* ECF Nos. 70, 89.) No new counsel entered an appearance on behalf of those Defendants, and Plaintiffs therefore sought and were granted defaults against the two Coastal entities, AMS, BHE, and CMG.[3] (ECF Nos. 104–112; 121–123.)

Plaintiffs voluntarily dismissed Britton-Harr and Deckman. (ECF No. 142.) The remaining Defendants are the two Coastal entities, AMS, BHE, CMG, Tombstone, and the three AeroVanti entities. All remaining Defendants are in default. In the instant Motion, Plaintiffs seek default judgment on the breach of contract claims as to the two Coastal entities and the aiding and abetting claim against Tombstone, BHE, AMS, CMG, and the three AeroVanti entities.

### III. Legal Standard

After entry of default under Federal Rule of Civil Procedure 55(a), a party may move for default judgment. Entry of default against a defendant does not alone entitle a plaintiff to judgment as of right:

"The defendant, by [its] default, admits the plaintiff's well-pleaded allegations of

---

[3] The Court's Local Rules require entity defendants to be represented by counsel. Local Rule 101.1(a). The Local Rules also permit the Court to "take such action, if any, that it deems appropriate, including . . . directing the party to show cause why a default should not be entered on claims asserted against it." Local Rule 101.2(b). As the Court has previously explained, defaults were appropriately entered against the entity Defendants here. (*See* ECF No. 133.)

fact . . . [but] is not held . . . to admit conclusions of law. In short, . . . a default is not treated as an absolute confession by the defendant of [its] liability and of the plaintiff's right to recover." The court must . . . determine whether the [conceded facts] support the relief sought in [the] action.

*Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). "In the Fourth Circuit, district courts analyzing default judgments have applied the standards articulated by the United States Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), to determine whether allegations within the complaint are 'well-pleaded.'" *Vasquez-Padilla v. Medco Props., LLC*, Civ. No. PX-16-3740, 2017 WL 4747063, at *2 (D. Md. Oct. 20, 2017) (collecting cases).

While a plaintiff's factual allegations are deemed admitted, allegations relating to the amount of damages are not deemed admitted based on a defendant's failure to respond to a suit. *Meade Communities, LLC v. Whitaker*, Civ. No. ELH-22-2381, 2023 WL 2914787, at *2 (D. Md. Apr. 11, 2023). Instead:

> [T]he Court must make an independent determination regarding allegations as to damages. In so doing, the court may conduct an evidentiary hearing. However, the court may also make a determination of damages without a hearing, so long as there is an adequate evidentiary basis in the record to support an award of the requested damages.

*Id.* at *3.

## IV.   Analysis

Plaintiffs seek default judgment as to three breach of contract claims against the two Coastal entities (Counts I–III) and as to its aiding and abetting claim against Tombstone, BHE, AMS, CMG, and the three AeroVanti entities (Count XXXI). The Court will grant default judgment as to the Coastal entities, but will deny the Motion as to the aiding and abetting count.

Plaintiffs will be directed to show cause why the case should not otherwise be dismissed.

### A. Default Judgment Against Coastal

The Court will grant default judgment against Coastal on Plaintiffs' breach of contract claims and will award Plaintiff their requested damages.

Under Maryland law, "[t]o prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation." *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). Further, "[u]nder Maryland law, the formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration." *Montage Furniture Servs., LLC v. Regency Furniture, Inc.*, 966 F. Supp. 2d 519, 524 (D. Md. 2013) (citation omitted). This is a straightforward breach of contract claim, and Plaintiffs have made the requisite showing. Plaintiffs have sufficiently alleged that the three Notes are contracts, and that Coastal breached each one by failing to repay the required amount by the agreed-upon date: Coastal failed to repay Frosted Apple $1,950,000.00 by November 30, 2020 under the April Note; failed to repay Frosted Apple $325,000.00 by September 5, 2020 under the May Note; and failed to repay Montfort by January 19, 2021 under the June Note.[4] Thus, the Court finds that Plaintiffs have established Coastal's liability for breach of contract.

Having found Coastal liable for breach of contract, the Court turns to the question of damages. "In a breach of contract action, upon proof of liability, the non-breaching party may

---

[4] With respect to the June Note, Plaintiffs alternatively move for default judgment on an unjust enrichment theory. (*See* ECF No. 134 at 12 n.8.) As noted above, Montford wired Coastal $1,000,000, rather than the $1,250,000 called for by the June Note. To the extent that it could be said that Montfort did not adequately perform under the June Note, the Court would find Coastal liable under an unjust enrichment theory. "[A] claim for unjust enrichment requires the plaintiff to establish three elements: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant knew of or appreciated the benefit; and (3) the defendant accepted or retained the benefit under such circumstances that it would be inequitable to allow the defendant to retain the benefit without paying value in return." *Hobbs v. St. Martin*, 320 F. Supp. 3d 748, 752 (D. Md. 2018) (citation omitted). The Court finds these elements easily satisfied here.

recover damages for 1) the losses proximately caused by the breach, 2) that were reasonably foreseeable, and 3) that have been proven with reasonable certainty." *PNC Bank, N.A. v. Davis*, 631 F. Supp. 3d 253, 271 (D. Md. 2022) (citation omitted). Here, Plaintiffs seek the following:

(1) For the April Note, Plaintiffs seek $1,950,000.00, plus default interest thereon at the rate of 8.33% per 30 days from November 30, 2020 through March 8, 2024, totaling $6,334,965.00 in default interest, for a total of $8,284,965.00;

(2) For the May Note, Plaintiffs seek $325,000.00, plus default interest thereon at a rate of 8.33% per 30 days from September 5, 2020 until March 8, 2024 totaling $1,137,045.00 in default interest, for a total of $1,462,045.00; and

(3) For the June Note, Plaintiffs seek $1,000,000, plus interest thereon at a rate of 6% per annum[5] from January 19, 2021 until March 8, 2024 totaling $188,050.72, for a total of $1,188,050.72.

"[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested." *See Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 795 (D. Md. 2010) (collecting cases)). The Court finds that the evidence provided by the Plaintiffs—in the form of the Notes themselves and a declaration from Montfort attesting to, *inter alia*, details surrounding the Notes and the amounts owed pursuant to the Notes—is sufficient to determine damages. *See, e.g., Pandora Jewelry, LLC v. Anna's of Lakeland, LLC*, Civ. No. 24-01303-JRR, 2024 WL 4284686, at *4 (D. Md. Sept. 25, 2024) (finding that copies of the relevant contract and a declaration were sufficient evidence for awarding contractual damages and interest). The evidence provided by Plaintiffs support the damages requested, as they set forth the amount owed

---

[5] Because of the discrepancy between the amount provided in the June Note ($1,250,000.00) and the amount paid by Montfort ($1,000,000.00), Montford is "not claiming an agreed return nor interest on this sum at the default rate reflected in the June Note [(i.e., 8.33%)]" and rather is "only claiming interest at the legal rate of 6% per annum on the liquidated unpaid sum" of $1,000,000. (ECF No. 134-2 at 6.)

on each Note, the date such amount was due, and the default interest rate thereon. Thus, Plaintiffs will be granted the requested damages.

### B. Default Judgment Against Tombstone, BHE, AMS, CMG, and AeroVanti

Plaintiffs seek default judgment against Tombstone, BHE, AMS, CMG, and AeroVanti for aiding and abetting. "One of the requirements for tort liability as an aider and abettor is that there be a direct perpetrator of the tort. Thus, civil aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable." *Alleco Inc. v. Harry & Jeanette Weinberg Found., Inc.*, 665 A.2d 1038, 1050 (Md. 1995).

In their Amended Complaint, Plaintiffs allege that Coastal "engaged in tortious and wrongful conduct" and that Tombstone, BHE, AMS, CMG, and AeroVanti "provided substantial assistance, encouragement, and aid to Coastal in the perpetration of this wrongful conduct." (ECF No. 103 ¶¶ 403–04.) Plaintiffs vaguely assert in their Motion for Default Judgment that "[m]ost courts view fraud as an economic tort in the nature of a breach of contract." (ECF No. 134 at 13–14.) Plaintiffs also state that "Coastal (including by its agent and alter ego Britton-Harr) engaged in tortious and wrongful conduct, including fraudulently inducing the Plaintiffs to make the loans to Coastal, diverting Frosted Apple's loaned funds to various transferees (including the other Default Defendants) in violation of the terms of the Notes, and making various misrepresentations and failing to disclose material facts to Plaintiffs in an attempt to conceal its actions" and that Tombstone, BHE, AMS, CMG, and AeroVanti "provided substantial assistance, encouragement, and aid to Coastal in the perpetration of this wrongful conduct." (*Id.* at 14.)

It is not clear from the Amended Complaint or from the Motion for Default Judgment on what underlying tort or torts the aiding and abetting claim is premised. In any event, Plaintiffs

8

have not sought default judgment on any underlying conduct other than breach of contract (and, alternatively, unjust enrichment with respect to Montfort's loan).[6] Indeed, they make no argument and cite no authority attempting to establish liability for any other counts. In short, Plaintiffs fail to meet their burden of establishing they are entitled to default judgment on their aiding and abetting claim. Thus, their Motion will be denied as to Tombstone, BHE, AMS, CMG, and AeroVanti.

Plaintiffs will be directed to show cause why the case—other than the default judgment entered against the Coastal entities as discussed above—should not otherwise be dismissed in its entirety. Failure to show cause will result in the dismissal of the remaining counts in the Amended Complaint and the closure of the case.

### V. Conclusion

For the foregoing reasons, the Motion for Default Judgment will be granted in part and denied in part, and judgment will be entered against Coastal. Plaintiffs will be directed to show cause as discussed above.

DATED this 20 day of November, 2024.

BY THE COURT:

_/s/ James K. Bredar_
James K. Bredar
United States District Judge

---

[6] Although they do not appear to base the aiding and abetting liability on the underlying breach of contract, aider and abettor liability requires that there exist underlying *tortious* activity, and "breach of contract is not a tort." *See Greenbelt Ventures, LLC v. Washington Metro. Area Transit Auth.*, 481 F. App'x 833, 839 (4th Cir. 2012).